And at this time, we'll hear Fernandez v. United States. Thank you. Thank you again. I'm thirsty this morning. Thanks. Please. There's. Oh. Good morning, your honors. May it please the court. My name is Ruth Liebesman. I am the attorney for Joe Fernandez. I did not represent Mr. Fernandez at trial, on appeal, or in his 2255 petition. I'm here specifically with regard to the one issue on which the court below granted a certificate of appealability. Which is whether or not the jury could have convicted Mr. Fernandez without knowing that he was going to have, that there was going to be a gun present. I think that that specific question is a little bit too limited. Because it's not simply whether or not he knew there would be a gun present, but when. And this is the problem with the fact that Rosemond was not taken into account, even during the preparation for trial. Because nobody asked any witness, when exactly did he know? Now, the main witness, Patrick Darch. Maybe he knew when he was recruited. Because he had a gun, and his cousin wanted him to have a gun for the killing. Well, according to Patrick Darch, he did not tell him. I'm talking about the evidence before the jury. And I'm talking about it too, Judge. According to Patrick Darch, he did not tell his cousin that day that he recruited him, which was the day before the killing. He said, I told him there was a problem in the family, that I wasn't going to let it. Who brought the gun? Who brought the gun? May I just bring the gun itself? My client denies that he had a gun or did any of the above, Judge. But the fact is this, there was a lot of contradictory testimony in this case. And the jurors are the judges of the facts, Judge. But the questions that were not asked were important. And I would like to look at this, Judge, in terms of the jury's requests for readback. Because the jurors asked for the readbacks of the testimonies of Patrick Darch and Alan Darch. Patrick Darch said that he was the original shooter, that he shot one guy, that his gun jammed on the second, and he ran out the door. And he did not know who the second shooter had actually been. He said it could have been Reyes, because Reyes was in the building. Now, Patrick Darch's testimony, and he also said that Luis Rivera was the driver. Now, they also asked for the readback at the same time of the testimony of Alan Darch, who claimed my client said that he was the original shooter, that he had had his gun jammed, and he was the one who ran out the door, and that Luis Rivera was not the driver, Reyes was the driver. I submit, Your Honors, that the jurors did not consider the testimony of those two to be proof beyond a reasonable doubt. And to be quite frank, neither did the government. Because the government dropped murder and gun charges against Rivera, the alleged driver, because the testimony about him was contradicted by Patrick Darch and Elaine Darch. It was completely contradictory. The government dropped those charges because there was no proof beyond a reasonable doubt based on Alan Darch and Patrick Darch's testimony. So what does that leave us with? Eubel Mendez-Mendez. And I'm always astounded when a jailhouse informant, especially one who had been cooperating before and was cooperating after, is believed to have been confessed to by a man who doesn't tell his wife, his priest, or his best friend. But Eubel Eubel Mendez came in and he testified that my client told him, Mr. Fernandez told him that he was in jail because he agreed to participate with his cousin and he was told to bring a weapon. Now what are the questions that weren't asked? Was the weapon specific? Did you bring a weapon? When did you find out that there was going to be a gun on the scene? Because Patrick Darch says he didn't tell him until the next day that there was going to be a killing. He certainly knew there was a gun before there was the shooting, correct? I don't believe he's so, Judge, no. But the fact is that what the court... You didn't see a gun? Your Honor, what Rosemond requires is that the government prove that the defendant's knowledge of a firearm was advanced knowledge and time to make a relevant legal and moral choice. When an accomplice does not know anything of a gun until it appears at the scene or at some late point where he has no realistic opportunity to withdraw, then as an unarmed accomplice he cannot aid and abet. Now this is charged on an aiding and abetting theory as well as direct evidence. And the direct evidence is missing because nobody actually saw him pull a trigger. Nobody did. Reyes was in the scene. Your client assembled the weapon, the gun, in the car on the way to the... Right, and this is Patrick. Patrick Darge was not believed. Patrick Darge and Alan Darge were not believed. And the question is... How do you know that? Could the... How do I know that? Because the jurors asked for Mendez, his testimony, after the internally contradictory testimonies of the two Darge brothers that was so contradictory that the government dropped charges against the alleged driver, okay? But they got Mendez... Please stop. Yes, sir. If someone can ask you a question. Mm-hmm. Okay? Yes. Thank you. You're saying that the jury didn't believe them because they asked for a readback? They did not believe them because they asked for the readbacks of the two brothers' testimonies and they contradicted one another and they wanted more. That's why they asked for more. That's an incredible leap of faith on your part or conclusion as to why jurors ask for readbacks. I mean, I understand that you're an advocate, but you're asking us to say that the jury had a credibility problem because they asked for readbacks? Because they asked for additional readbacks. The government is claiming that Patrick Darge was the basis for this conviction. Now, Minaya and Reyes testified. I'm sorry? No, go ahead. I'm not going to ask any more questions. No, sir. I was speaking and I will stop. Go ahead. Okay. Reyes and Minaya testified. They testified about this murder for hire that they were going to do. They testified that they all knew that they were bringing in Patrick Darge. And Minaya says three or four days beforehand, I found out it was going to be a cousin. Well, there is a cousin. His name is Joe Agramito, and that's a cousin that Mr. Darge testified he committed murders for hire with. If there was a cousin known three or four days beforehand, it was Joe Agramito. It was not Joe Fernandez because, according to Darge, he told Patrick the night before, I mean, he told my client the night before that there was a problem, that he needed to address it, that he did not tell him that day, the day before, that there was going to be a murder. He did not tell him the day before. You have reserved three minutes for rebuttal. You could use it now. I'm sorry? You have reserved three minutes for rebuttal. You could use it now. I would like to use it for rebuttal. Okay. Thank you. Good morning. Good morning. May it please the Court. My name is Russell Capone. I represent the United States on this appeal, and I was one of the assistants who represented the United States at trial. Appellant's challenge to the jury instruction on aiding and abetting is procedurally defaulted because he did not raise it on his first appeal. He cannot deny that Rosemond would have required a different instruction. Yes. Rosemond would have required a different instruction, and, in fact, the Second Circuit law before Rosemond Medina would have required a different instruction. So the charge was an error. The charge was an error. The question is — You argue that it was harmless. Yes, that he cannot overcome his procedural default. He needs to show — Joe Fernandez needs to show cause and prejudice. And I'll start with prejudice because a proper charge under Rosemond could not have changed the outcome of this trial. He needs to show, under the relevant law, that the erroneous charge worked to his actual and substantial disadvantage or so infected the entire trial that the resulting conviction violates due process. That's from Frady. All of the evidence at this trial suggested that Joe Fernandez had advanced — The evidence was, as counsel pointed out, contradictory. The evidence was — But it wasn't clear that Joe Fernandez was the murderer or that he brought a gun. There was no contradictory evidence, Your Honor, on the question whether Joe Fernandez brought a gun. The only conflict between the testimony of the two brothers, Patrick Darge and Alan Darge, was that Patrick Darge testified that he was the first shooter, and his gun jammed, and then Joe Fernandez — Yes, exactly. Alan Darge, who years later — Was not there. Was not there and received a confession from Joe Fernandez. As he recalled it, the confession was that Joe Fernandez is the one who fired the first shots and the gun jammed, and then Patrick Darge finished the job. So that — That's a very big difference in how the story played out, isn't it? I mean, it's big. One says I did it. One says the other guy did it. Both say that they both fired shots, Your Honor. So whether one went first or one went second, I submit is actually not as significant. But you can see how a jury might be in a quandary about which one of the brothers to believe. Which one of the brothers to believe, but under either brother, Your Honor, under the testimony of either brother, Joe Fernandez was there. Joe Fernandez fired shots. Joe Fernandez was hired to commit a murder for hire. The liability choice doesn't matter in terms of his participation in the use of the gun. Exactly, Your Honor. Even if your gun jams, it's a gun. Yes, Your Honor. You have it and you brought it. Yes, Your Honor. And the testimony of Patrick Darge was that they had a conversation in advance of this murder for hire in which he solicited Joe Fernandez to participate. And, in fact, there are two counts here. There's a murder for hire conspiracy and there's a 924J count. And we're here only on the 924J count. But he was convicted of a murder for hire conspiracy, meaning that the jury found that Joe Fernandez agreed in advance that he knew that he was participating in what would be a murder for hire. There was only one witness who testified as to that element. I'm sorry, two witnesses, Alan Darge and Patrick Darge. Eubel Mendez did not testify in a way that would have . . . And Patrick told him to bring a weapon. That's devastating on the 924 charge, isn't it? Devastating, Your Honor, to . . . To the defense. To the defense. Yes. My adversary claims that that doesn't . . . that wouldn't suffice because he didn't specifically say gun. But it certainly is not inconsistent with . . . Well, Patrick told him to bring a weapon. And this was the jailhouse snitch, to use the vernacular, correct? Yes. Who he spent five days with after many years. Yes. Yes, Your Honor. So I share counsel's concern with the quality of that kind of testimony. I don't deny it's there in the record. Yes, Your Honor. But, you know, it does beg credulity when you don't tell anyone else for years and then you tell this guy you're with in a jail cell. Who is, by the way, also cooperating on other issues. I understand, Your Honor. What I take issue with is the notion that the jury convicted possibly solely based on that testimony. No, but he was the tiebreaker. That was the important thing. He was the one that said bring a gun, bring a weapon. Bring a weapon, not bring a gun. Every other witness who had knowledge of this testified to gun. Mendez said weapon. But the issue here is that the jury must have believed Patrick Darge because they could not have convicted Joe Fernandez on count one, murder for hire, without Patrick Darge's testimony. Eubel Mendez did not testify that, did not have any knowledge that this crime was even a murder for hire to begin with. The relevant testimony from Mendez that we're talking about is two sentences of his testimony, really the critical two sentences where he said, Joe Fernandez confessed to me that he participated in something with Patrick and he was told to bring a weapon. He had no idea that this was a murder for hire. So the jury must have believed Patrick Darge in order to convict the defendant. And if they believed Patrick Darge, his testimony was that Joe Fernandez brought a gun to this murder for hire. And it strains, the issue at this trial was not did the second shooter, was the second shooter a shooter? Did the second shooter know he would be a shooter? The issue was a whodunit issue. Was Joe Fernandez in fact the second shooter? This was not an issue. This was not a litigated issue. And in fact, it defies common sense to think that Joe Fernandez participated in a murder for hire, agreed to participate in a murder for hire, which the jury found that he did, drove to the scene of the murder for hire with the other participants, went into the building, waited for the victims, and then at the last possible second when he couldn't withdraw, Patrick Darge pulls out guns and starts shooting is what happened. And he couldn't have had advanced knowledge. That strains credulity, Your Honor, and it certainly isn't enough to satisfy the actual prejudice standard here. The court has to find that it's far more than a mere possibility that the outcome would have been different, but that this error worked to a substantial disadvantage to Joe Fernandez. I'll move on quickly to the cause issue. I think for the same reason the defending appellant cannot show cause here. He's relying on ineffective assistance to try to show cause, but it's precisely because this issue could not possibly have affected the trial that it was not unreasonable for his appellate counsel to not raise it on appeal. Moreover, as I said, this issue only goes to count two. Count one, the murder for hire conspiracy carried with it a mandatory life sentence. And so even if appellant is successful on this issue, he's still facing a mandatory life sentence. It's not unreasonable in that context for his appellate counsel not to have focused on this issue, which would have had no practical impact on the rest of his life. The way the government proved its case, it wasn't really . . . The government's proof was always directed at claiming that Fernandez brought the gun to the crime scene. Yes. So I have a hard time understanding how an attorney would think of the charge being inadequate in terms of not knowing that a gun would be used under 920. You know, the error that is pointed out in the context of the inadequacy of the jury charge. Exactly, Your Honor, because it simply wasn't an issue. This three-week-long trial was exclusively about who was it, who was the second shooter. Who the shooter was. Yeah, not . . . Whether anybody knew or didn't know that a shooting was going to occur. Exactly. And that's why, Your Honor, Roseman really has no impact, would have had no impact on this trial. And if the Court has no further questions, I'll rest on my brief. Thank you. Rebuttal. Thank you. I have to disagree with my learned adversary that the jury had to have believed Patrick Darge to have found that there was a murder-for-hire conspiracy. Minaya, the kingpin, testified that he ordered a murder-for-hire, that he conspired with Qualar and Reyes, and that they brought in Patrick Darge. That's enough to establish the murder-for-hire. Patrick Darge's testimony was superfluous to establishing the fact of the conspiracy itself. The conspiracy itself did not require the testimony of either Darge brother. What about it in the government's case? Would an attorney, at the time of the trial of this case, would an attorney think that, for some reason, it would be a good defense for Fernandez to assert that he didn't know a gun was going to be used? Well, it's a very good defense. And, in fact, Joe Fernandez . . . His defense . . . his claim is he wasn't there. Yes, he absolutely disclaimed . . . Why would the . . . why would that . . . his defense wasn't, well, I was there, but I didn't know a gun was going to be used. No, Judge, but it's not necessary to forego every reasonable and helpful instruction, simply because it's not going to fit in with your specific thing, that he didn't do it. We all . . . I'm sorry? In order to measure ineffective assistance at counsel, we're supposed to understand whether a lawyer operating under the standards of practice at that time would have appreciated the fact that he should have raised his defense and asked for a specific charge. You're here on a heave as to the inappropriateness of the charge, not anything else. Well, Your Honor, I'm . . . And that the defense was, I wasn't there. Why a lawyer would know to ask for a Rosemont-type charge? Because any lawyer with trial experience would argue to a jury, we say he wasn't there and he didn't do it, but let's look at what the government's proof is, because it's not sufficient under the law. So, even if you believe this particular testimony . . . This is about a jury charge and ineffective assistance at counsel excusing the failure to contest the jury charge at the time of trial. Well, I think it was a complete fact that he didn't know about Rosemont and he didn't know about the higher quality of instruction required by the Second Circuit. Judge, I mean, it's not funny. There is a man on trial, a man, after 32 years of federal criminal defense, I have someone I actually believe is totally innocent and that is stressful. Okay? This is a situation, Judge, in which you say, yes, we deny he was there. We deny he had anything to do with it. If it was a cousin, it was his cousin, Joe Agrabito, whom the defendants have testified participated in murders for hire with them before. It wasn't him. But, even if you want to listen to what these witnesses have to say, it's still not sufficient under the law. Any lawyer worth his salt or her salt will say, yes, he wasn't there, he didn't do it, but their case doesn't rise to the level. And, it's not about the sufficiency of the case, Judge. It's about the sufficiency of the representation. Any good trial lawyer, any decent trial lawyer is going to say, he didn't do it, but let's look at what their proof is because their proof doesn't do it because the law requires more. And, the law did require more. Much more. Thank you both. We'll reserve decision.